```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION

PHUOC T. WALLACE,               §
                                §
     Plaintiff,                 §
                                §
v.                              §    Civil Action No. H-11-3388
                                §
OFFICER P. FOSTER,              §
CITY OF HOUSTON,                §
                                §
     Defendants.                §
```

## MEMORANDUM OPINION

Pending before the court[1] is Defendants City of Houston ("City") and Officer P. Foster's ("Officer Foster")(collectively "Defendants") Motion for Summary Judgment (Doc. 24). The court has considered the motion, Plaintiff's response, Defendants' reply, all relevant summary judgment evidence, and the applicable law. For the reasons discussed below, the motion is **GRANTED**.

### I.  Factual and Procedural Background

This case arises out of a minor traffic accident on the evening of April 29, 2011, on the southbound feeder road of U.S. 59 in Houston, Texas, involving vehicles driven by Plaintiff and Joe Fonseca ("Fonseca").[2] After the accident but before police arrived, Fonseca verbally and physically assaulted her and took

---

[1] The parties consented to proceed before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). See Docs. 29, 30, 31 and 32.

[2] See Doc. 1, Pl.'s Orig. Compl., p. 3. As this case is at the summary judgment stage, the court relies on the undisputed facts which are supported by competent evidence. See Fed. R. Civ. P. 56 (c)(1). However, in the interests of a presenting a coherent factual recitation, the court also cites to several undisputed, but non-material, allegations contained in Plaintiff's complaint. The provenance of each fact is cited.

away her car keys.[3] Officer Foster and Officer O'Neill arrived to investigate the accident.[4] According to Plaintiff, she gave her driver's license and insurance card to Officer Foster, who used the documents to fill out paperwork.[5] Plaintiff stated that Officer Foster then gave her driver's license to Officer O'Neill.[6] When Plaintiff asked for the license back, Officer O'Neill refused, stating, "You are not allowed to drive."[7] Plaintiff last saw her driver's license in the possession of Officer O'Neill.[8] Plaintiff related that when Officer Foster gave her a citation for the accident, she asked for her license back and he told her that he did not have it.[9] Plaintiff added that Officer O'Neill yelled at her and called her "crazy" and "stupid."[10]

Plaintiff testified that she sought assistance from Officer

---

[3] See Doc. 1, Pl.'s Orig. Compl., p. 4.

[4] Id. at p. 3; see also, Doc. 24, Ex. D to Defs.' Mot. for Summ. J., Aff. of T. O'Neill, wherein he identified himself as the other officer dispatched to the accident.

[5] See Doc. 24, Ex. B to Defs.' Mot. for Summ. J., Pl.'s Dep., p. 78.

[6] Id. at p. 79. In his sworn statement, Officer O'Neill testified that he took Plaintiff's driver's license and gave it to Officer Foster in order that he could issue a citation. O'Neill does not account for the whereabouts of the license after that point. See Doc. 24, Ex. D to Defs.' Mot. for Summ. J., Aff. of T. O'Neill, p. 2. The court, as it must, credits Plaintiff's testimony on this point as she is the non-movant.

[7] See Doc. 24, Ex. B to Defs.' Mot. for Summ. J., Pl.'s Dep., p. 81. Later in her deposition, Plaintiff testified that Officer O'Neill told her that he was keeping her license because she had had too many accidents. Id. at p. 83.

[8] Id. at p. 82.

[9] Id. at p. 83.

[10] Id. at pp. 81, 82.

2

Foster to recover her car keys.[11]  Officer Foster questioned Fonseca about taking Plaintiff's keys.[12]  Fonseca admitted to Officer Foster that he had removed the keys from Plaintiff's ignition and had thrown them inside her car to prevent Plaintiff from leaving before the police arrived.[13]  Officer Foster searched for the car keys on Fonseca's person, inside Plaintiff's vehicle and in the lanes of traffic, but could not locate the keys in the dark.[14]  According to Plaintiff, Officer Foster told her that if she asked about the car keys one more time, he would handcuff her.[15]

Plaintiff also asked Officer Foster for a Vietnamese-speaking police officer, but he refused.[16]  Officer Foster admitted that, because he could communicate with Plaintiff in English, he did not see a need to summon a Vietnamese-speaking officer.[17]

On September 16, 2011, Plaintiff brought suit against the City and Officer Foster for depriving her of property in violation of

---

[11]   Id. at p. 93.

[12]   See Doc. 24, Ex. C to Defs.' Mot. for Summ. J., Aff. of P. Foster., p. 2.

[13]   Id.

[14]   Id. at p. 3.  Officer O'Neill observed Officer Foster pat down Fonseca.  See Doc. 24, Ex. D to Defs.' Mot. for Summ. J., Aff. of T. O'Neill, p. 2.

[15]   See Doc. 24, Ex. B to Defs.' Mot. for Summ. J., Pl.'s Dep., p. 93.

[16]   See Doc. 1, Pl.'s Orig. Compl., p. 4.

[17]   See Doc. 24, Ex. C to Defs.' Mot. for Summ. J., Aff. of P. Foster., p. 3.

her Fifth and Fourteenth Amendment rights.[18]  In the complaint, Plaintiff alleged that Officer Foster seized her driver's license, demanded that she stop talking, refused to assist her in recovering her car keys but instead called a tow truck, failed to question witnesses and told her she did not deserve to drive.[19]  As a result of these deprivations, Plaintiff claimed that her car had to be towed, she had to purchase replacement keys and she suffered lost wages when she could not drive to work.[20]

The complaint alleged that the City was liable for Officer Foster's actions because they were in conformity with the City's policies, practices or customs.  The complaint also claimed that the City failed to train, supervise and discipline its officers.[21]  Finally, Plaintiff complained that the City failed to properly investigate the traffic accident of April 29, 2011.[22]

On September 14, 2012, the City and Officer Foster filed the pending motion for summary judgment.[23]  Plaintiff responded to the motion on September 28, 2012,[24] and a reply brief was filed by

---

[18]   See Doc. 1, Pl.'s Orig. Compl., p. 5.

[19]   Id. at p. 4.

[20]   Id. at p. 5.

[21]   Id. at p. 6.

[22]   Id. at pp. 6-7.

[23]   See Doc. 24, Defs.' Mot. for Summ. J.

[24]   See Doc. 26, Pl.'s 1st Resp. to Defs.' Mot. for Summ. J. ("Pl.'s Resp.").

defendants on October 5, 2012.[25] The court now considers the motion.

## II. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th

---

[25] See Doc. 27, Defs.' Reply to Pl.'s Resp. to Defs.' Mot. for Summ. J. ("Defs.' Reply.").

5

Cir. 1992).  If the moving party can show that the facts are not in dispute, the party opposing summary judgment must go beyond the pleadings and proffer evidence demonstrating that genuine issues of material fact do exist that must be resolved at trial.  See Celotex Corp., 477 U.S. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

### III. Analysis

Both the City and Officer Foster seek summary judgment on Plaintiff's claims.  The court begins with Defendant City's challenge to Plaintiff's assertions that one or more of its policies or customs caused Plaintiff constitutional harm.  The court then turns to Officer Foster's argument that he did not deprive Plaintiff of any property and is otherwise entitled to qualified immunity because his actions were objectively reasonable.

**A.  City Policy**

A city can be held liable under Section 1983[26] only for its own unconstitutional acts, not pursuant to a theory of vicarious liability. Connick v. Thompson, ___ U.S. ___, 131 S. Ct. 1350, 1359 (2011). In order to attribute Section 1983 liability to a local government, a plaintiff must establish the elements of a prima facie case and must demonstrate that the city had a custom or policy that resulted in the constitutional injuries alleged. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978); see also Connick, 131 S. Ct. at 1359. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 131 S. Ct. at 1359.

The challenged official policy must be determined to be the moving force behind, or the actual cause of, the constitutional injury. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). An official policy can be found in the form of written statements, regulations or ordinances or a practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." Piotrowski, 237 F.3d at 579 (quoting

---

[26] The provision reads, in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
42 U.S.C. § 1983.

Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984)). If the official policy does not facially violate the constitution, a local government can be held liable if the policy was adopted with deliberate indifference to the known or obvious consequences of the policy. Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force, 379 F.3d 293, 309 (5th Cir. 2004).

Courts have recognized that, under limited circumstances, the failure to train, to supervise, or to discipline employees may give rise to Section 1983 local-government liability. Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown [hereinafter Brown II], 520 U.S. 397, 407 (1997); Pineda v. City of Houston, 291 F.3d 325, 331 (5th Cir. 2002); Thompson v. Upshur Cnty., Tex., 245 F.3d 447, 459 (5th Cir. 2001); Piotrowski, 237 F.3d at 581-82. The Supreme Court has cautioned, "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, 131 S.Ct. at 1359. In order to show deliberate indifference, a plaintiff must show a pattern of similar constitutional violations by untrained employees. Brown II, 520 U.S. at 409.

In her complaint, Plaintiff alleged: (1) that the City had a custom of not disciplining its officers who violated a City policy or practice; (2) that the City failed to train its officers to set aside their prejudices; and (3) the City failed to properly

8

investigate the April 29, 2011 accident.[27]

In support of its motion for summary judgment, the City cited the testimony of Captain J. Evans ("Captain Evans"), who has been employed with the Houston Police Department ("HPD") for the past sixteen years.[28] Captain Evans stated that in addition to maintaining his status as a certified peace officer, he has had additional training associated with his employment with HPD as a captain and that he was familiar with the various policies and practices of HPD, including its policies regarding discipline, hiring, recruiting, investigations and training.[29] Captain Evans averred that he had reviewed the pleadings in this lawsuit, the Internal Affairs Division's investigation of Plaintiff's complaint against Officer Foster, the accident report, the offense report, the training records and personnel records of Officers Foster and O'Neill and the affidavits of the officers.[30]

Captain Evans averred that, based on his knowledge of City policy and practices, there was no City policy to unlawfully arrest or detain citizens, to allow officers to be rude to citizens, to unlawfully take or not return a citizen's driver's license or to

---

[27]   See Doc. 1, Pl.'s Orig. Compl., pp. 6-7.

[28]   See Doc. 24, Ex. E to Defs.' Mot. for Summ. J., Aff. of Captain J. Evans, p. 1.

[29]   Id. at p. 2.

[30]   Id. at pp. 1-2.

violate a citizen's constitutional rights.[31]  Captain Evans stated that in his opinion and based on his personal knowledge, the City adequately trained its police officers as well as properly disciplined police officers who violated City policy.[32]  And, after reviewing the allegations made in this case, Captain Evans believed that Officer Foster did not commit any acts in violation of a City policy or the U.S. Constitution.[33]  Captain Evans found that Officer Foster's investigation of the accident was thorough and complete.[34]  Captain Evans also stated that Officer Foster acted reasonably and within his discretion when he decided not to call a Vietnamese-speaking officer to the accident scene.[35]

Plaintiff has failed to rebut this summary judgment evidence.  The record is void of any evidence that: (1) the City had a policy, practice or custom of illegally retaining a citizen's driver's license or car keys after writing a traffic citation; (2) there was a pattern of similar seizures of driver's licenses or car keys by City police officers; or (3) the City failed to properly discipline its officers who did not comply with its policies or general orders.  There is no evidence to support Plaintiff's claims that

---

[31]   Id. at p. 2.

[32]   Id.

[33]   Id.

[34]   Id. at p. 3.

[35]   Id.

the City failed to investigate either the April 29, 2011 traffic accident or Plaintiff's post-accident complaints about Officer Foster.

Turning to Plaintiff's failure to train and/or supervise claim, Plaintiff has not pointed to a single omission in any HPD officer's training that would raise a fact issue of deliberate indifference controverting Defendant City's summary judgment evidence that its officers were adequately trained.  The only disputed facts cited in Plaintiff's opposition to Defendants' motion for summary judgment concerned whether Officer Foster threatened to arrest Plaintiff if she did not stop talking, whether any HPD officer was rude to her on April 29, 2011, and whether any HPD officer kept her driver's license.  Notably, these fact issues do not impact the City's motion for summary judgment because Plaintiff has produced  no evidence that any disputed action was taken pursuant to a City policy, practice or custom.  The City is therefore entitled to summary judgment on all Plaintiff's claims.

**B.  Officer Foster**

A plaintiff can establish a prima facie case of a constitutional violation against an individual police officer under Section 1983 by alleging: 1) a violation of a federal constitutional or statutory right; and 2) that the violation was committed by an individual acting under the color of state law. Doe v. Rains County Indep. Sch. Dist., 66 F.3d 1402, 1406 (5th Cir.

11

1995).  The statute creates no substantive rights, but only provides remedies for deprivations of rights created under federal law.  Graham v. Connor, 490 U.S. 386, 393-94 (1989).

Government officials, sued in their individual capacities, are protected by qualified immunity from Section 1983 suits for actions performed in the exercise of discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  By pleading qualified immunity in good faith, a summary-judgment movant shifts the burden to the nonmovant to rebut the movant's assertion.  Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007).

In order to overcome an assertion of qualified immunity, a plaintiff bears the initial burden of showing that the officer's conduct violated a constitutional or statutory right.  Hope v. Pelzer, 536 U.S. 730, 736 (2002); Saucier, 533 U.S. at 201, Pearson v. Callahan, 555 U.S. 223, 236 (2009)(stating that the rigid structure of Saucier is no longer required and that "[T]he judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."); Williams v. Kaufman Cnty., 352 F.3d 994, 1002 (5th Cir. 2003).  The inquiry ends if the allegations do not support a finding of constitutionally

impermissible conduct. Saucier, 533 U.S. at 201; Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003).

Ultimately, if the law is sufficiently clear, a plaintiff must prove that the officer's actions were objectively unreasonable within that legal context. See Saucier, 533 U.S. at 206; Hare II, 135 F.3d at 326. The analysis is "based on the viewpoint of a reasonable official in light of the information then available to the defendant . . . ." Freeman v. Gore, 483 F.3d 404, 411 (5th Cir. 2007). Consideration is given to all facts known to the defendant, but not to a particular defendant's state of mind. Thompson, 245 F.3d at 457.

The defendant official's actions are held to have been objectively reasonable unless all reasonable officials in the same circumstances would have recognized that the defendant's conduct violated the plaintiff's constitutional rights. Id. If the evidence gives rise to a difference of opinion as to the lawfulness of the action among reasonably competent officers, the official is entitled to qualified immunity. Malley v. Briggs, 475 U.S. 335, 341 (1986). Reasonableness may be decided as a matter of law provided that the underlying facts are not in dispute. Jacobs v. W. Feliciana Sheriff's Dept., 228 F.3d 388, 394 (5th Cir. 2000).

As outlined above, the court's first step under Saucier is to identify the specific constitutional right that is allegedly infringed. Albright v. Oliver, 510 U.S. 266, 271 (1994)(citing

Graham, 490 U.S. at 394). In her complaint, Plaintiff alleges that Officer Foster refused to call a Vietnamese-speaking officer to the accident scene, told Plaintiff to stop talking, refused her request to assist her in recovering her car keys, failed to investigate the accident, told her that she did not deserve to drive a car and deprived her of her driver's license without due process of law.[36] At her deposition, Plaintiff additionally claimed that Officer Foster threatened to place her in handcuffs if she continued to ask about her car keys.

Officer Foster argues that, with the exception of the claim that he unlawfully seized her driver's license, Plaintiff's complaints fail to rise to the level of a constitutional violation. The court agrees. Plaintiff has failed to cite to case law that would support her contention that Officer Foster's refusal to call a Vietnamese-speaking officer to the scene when he was able, in his opinion, to adequately communicate with Plaintiff in English violated any clearly established right protected by federal law. Likewise, Plaintiff has failed to cite, and the court has not located, case law supporting her claims that the officer's alleged rude remarks, alleged refusal to locate her car keys, alleged failure to investigate the accident or alleged threat to place her in handcuffs for failing to follow his verbal instructions violated her clearly established constitutional rights. It is Plaintiff's

---

[36] See Doc. 1, Pl.'s Orig. Compl., pp. 4-5.

14

burden to overcome the applicability of a claim for qualified immunity, and Plaintiff has failed to produce competent summary judgment evidence with regard to the above claims. See Gates v. Tex. Dep't of Protective & Regulatory Servs., 537 F.3d 404, 419 (5th Cir. 2008)(citing Harlow v. Fitzgerald, 457 U.S. at 818). Thus, Officer Foster is entitled to qualified immunity on these allegations.

Only the claim that Officer Foster deprived her of her driver's license without due process of law potentially raises a claim of constitutional dimension. However, crediting Plaintiff's version of the events as true, that claim has limited factual support.[37] Plaintiff testified that while Officer Foster initially took her license in order to fill out the accident report and traffic citation, it was Officer O'Neill who kept Plaintiff's driver's license, not Officer Foster.[38] Officer Foster may only be

---

[37] Officer Foster averred that he recalled returning Plaintiff's driver's license to her when he gave her the traffic citation. See Doc. 24, Ex. C to Defs.' Mot. for Summ. J., Aff. of P. Foster, p. 3.

[38] See Doc. 24, Ex. B to Defs.' Mot. for Summ. J., Pl.'s Dep., pp. 79, 81-83.  The exact testimony follows:

Q: Okay.  Then what happened to the driver's license?

A: He [Officer Foster] – I don't know what document was writing, but he – some kind of piece of paper.  He [Officer Foster] give the driver's license and that piece of paper to the other officer [Officer O'Neill].

. . . .

Q: Okay.  Then what?

A: He [Officer O'Neill] said, "I'm not going to let you drive the car anymore."

Q:  Because?

held personally liable for his unconstitutional conduct, not the conduct of another.  See Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010)(citing City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

Assuming, then, that Plaintiff has stated a claim for the wrongful seizure of her driver's license, as opposed to the wrongful deprivation of her license, the court considers Officer

---

A.  He would not give me back my driver's license.

Q: So he said, "I'm going to keep the driver's license and I'm not going to let you have it back"?

A: He didn't say that "I'm going to keep" – he did not say that he's going to keep my driver's license.  He said, "You are not allowed to drive."

. . . .

Q: Did you ever see him [Officer O'Neill] give the driver's license or the ticket back to Paul Foster?

A: No, he was standing farther back.

Q: Okay.  So the last time you saw your driver's license was when the partner [Officer O'Neill] had it and said, "You're not driving anymore," correct?

A: Yes.  He never gave it back to me.

. . . .

Q: Okay.  Then who gave you the citation or the ticket?

A: The Foster, he gave – He gave me the paperwork.  He did not give me back my driver's license.

Q:  And did you say to Paul Foster, "Where's my license?"

A: When he gave me the ticket, I saw the driver's license was with it, so when I pick it up, I said, "There's no driver's license."

Q: Okay.  And then what did Paul Foster say?

A: He said he didn't have it.

Q: Okay. And so based on everything you saw, you think the partner police officer still kept it?

A: Yes.

Foster's claim of qualified immunity for that action. In order for Plaintiff's claim for wrongful seizure to survive, the facts must show that a reasonable official would understand that what he was doing violated a clearly established right. <u>Wooley v. City of Baton Rouge</u>, 211 F.3d 913, 919 (5th Cir. 2000).

    Officer Foster averred that he asked for both Plaintiff's and Fonseca's driver's licenses and proofs of insurance after he arrived at the scene of the accident.[39] Plaintiff does not dispute that Officer Foster had a legitimate purpose in requesting her driver's license. In fact, it is well-settled that a police officer may request certain information from a driver in a routine traffic stop, such as a driver's license and car registration. <u>See United States v. Brigham</u>, 382 F.3d 500, 507-08 (5th Cir. 2004)(finding no constitutional impediment to a law enforcement officer's request to examine a driver's license or vehicle registration during a traffic stop). Therefore, Plaintiff has not overcome Officer Foster's claim of qualified immunity concerning his initial seizure of her driver's license because these facts do not support a conclusion that Officer Foster would have known that his actions were unconstitutional.

    Plaintiff also alleges that Officer Foster gave her driver's

---

[39]   <u>See</u> Doc. 24, Ex. C to Defs.' Mot. for Summ. J., Aff. of P. Foster, p. 2.

17

license and another piece of paper to Officer O'Neill.[40] Plaintiff fails to raise a factual or legal issue that Officer Foster would have known that this conduct violated a clearly established right. See Pearson, 555 U.S. at 244 (stating that qualified immunity operates to ensure that before a police officer is subjected to suit, he must be on notice that his conduct is unlawful). Thus, Plaintiff has failed to overcome Officer Foster's claim for qualified immunity concerning his alleged action in handing the driver's license to Officer O'Neill. As Plaintiff has not overcome Officer Foster's defense of qualified immunity, all claims against Officer Foster should be dismissed.

## IV. Conclusion

In light of the foregoing, Defendants City of Houston and Officer P. Foster's Motion for Summary Judgment (Doc. 24) is **GRANTED**.

**SIGNED** in Houston, Texas, this 19th day of March, 2013.

Nancy K. Johnson
United States Magistrate Judge

---

[40] See Doc. 24, Ex. B to Defs.' Mot. for Summ. J., Pl.'s Dep., p. 79.

18